UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

EVELIN DAYANA ANDINO,

Petitioner,

v.

CHRISTOPHER CHESTNUT, *et al.*,

Respondents.

Case No. 1:26-cv-04130 (VC)

**ORDER GRANTING AMENDED PETITION FOR WRIT OF HABEAS CORPUS**

Re: Dkt. Nos. 20, 25

Before the Court is Petitioner Evelin Dayana Andino's amended petition for writ of habeas corpus and motion for a preliminary injunction seeking release from the custody of U.S. Immigration and Customs Enforcement ("ICE"). Dkt. Nos. 20, 25. She is currently detained at the California City Detention Facility ("CCDF"), and argues that her detention violates both her procedural and substantive due process rights. *See* Dkt. No. 25 ¶¶ 80–103. In their combined response to the motion and amended petition, Respondents oppose relief, arguing that Petitioner's detention is lawful and mandatory during the pendency of her removal proceedings under 8 U.S.C. § 1226(c)(1)(B). *See* Dkt. No. 26 at 1; Dkt. No. 8 at 4.

On October 14, 2026, the Court put Respondents on notice that the evidence submitted by Petitioner appeared sufficient to find a substantive due process violation, and gave Respondents the opportunity to contest the evidence at an evidentiary hearing. Dkt. No. 30. Respondents filed a response stating that they would submit on the papers. Dkt. No. 31. For the reasons that follow, the Court grants the amended petition as to Petitioner's substantive due process claim, and orders her release. The Motion for a Preliminary Injunction is resolved as moot.

## I. BACKGROUND

Petitioner entered the United States when she was fourteen years old, and had lawful status to remain in the country from 2013 to 2019 under the Deferred Action for Childhood Arrivals program. Dkt. No. 25 ¶ 12. In 2019 she became a lawful permanent resident. *Id*. She previously lived with her daughter—who is a United States citizen—and elderly mother. *Id*. ¶¶ 14–15.

Following Petitioner's grant of legal status, she pled guilty to a controlled substance offense and was sentenced to two years in prison, plus ten years of probation. *Id*. ¶¶ 17–18. She was released in April 2025 with an ankle monitor after serving roughly four months in Ventura County Jail, and was placed on house arrest. *Id*. ¶ 18. On November 14, 2025, Petitioner reported to the probation office to have her ankle monitor removed and was arrested by ICE. *Id*. ¶ 20. She has remained detained continuously since that date, amounting to over eleven months in detention.

Petitioner was served with a Notice to Appear on November 17, 2025, charging her as deportable under 8 U.S.C. § 1227(a)(2)(A)(iii) for having been convicted of an aggravated felony as defined in 8 U.S.C. § 1101(a)(43)(B), and placing her in removal proceedings. *See* Dkt. No. 8-2 at 1–4. Following her detention, she applied for asylum and withholding of removal. *See* Dkt. No. 25 ¶ 22. She was also transferred between detention facilities, and had her case re-assigned to three separate Immigration Judges ("IJ"). *Id*. She was ordered removed by an IJ on June 3, 2026. *Id*. She appealed that decision to the Board of Immigration Appeals ("BIA") on June 26, 2026. *Id*. The appeal remains pending and is likely to remain unresolved for the coming months as Petitioner alleges that it takes the BIA, on average, 446 days to rule on an appeal. *Id*. ¶ 23.

Petitioner further claims that the conditions at CCDF are unsafe. Specifically, she alleges that she is confined to her cell for fourteen to fifteen hours per day and is only allowed one hour of outdoor recreation. *Id*. ¶¶ 24–25. The facilities are allegedly rarely disinfected with visible mold on the walls, and the drinking water is often discolored and tastes of bleach. *Id*. ¶¶ 26–28, 31–33. She also contends that the food is nutritionally deficient: meals consist of bread, rice, or

pasta with ground meat or bologna, and she is occasionally given chicken, bananas, and broccoli. *Id*. ¶¶ 29–30. The facilities are also kept cold, and they often run out of basic hygiene items such as toilet paper and menstrual pads. *Id*. ¶¶ 35–38. Petitioner maintains that she did not experience any of these conditions during her criminal confinement at the Ventura County Jail. *Id*. ¶¶ 56–67.

In addition to the facilities, Petitioner alleges that she has received inadequate medical care while in detention. In December 2025 she began experiencing severe abdominal pain, resulting in a baseball sized lump forming on the left side of her abdomen. *Id*. ¶ 41. She reported this issue to the nurse practitioner on staff at CCDF and was told that she needed an ultrasound, but that there were no doctors on staff to conduct the test. *Id*. ¶ 42. Rather, she was told she would need to wait until release or deportation to seek care. *Id*. She got this same message at a second appointment with the nurse practitioner on staff. *Id*. ¶ 44. Despite persistent pain in her abdomen, Petitioner has not been seen by a doctor, received testing, or been provided with pain medication. *Id*. ¶ 45. She further claims that she is suffering from an untreated ear condition and a knee injury which medical staff have ignored, and has had difficulty breathing. *Id*. ¶¶ 47–52.

Petitioner's allegations of inadequate medical care and poor facilities mirror reports concerning CCDF that Petitioner references in the amended petition. *Id*. ¶¶ 71–79. On May 15, 2026, the California Attorney General released a report indicating, among other things, that "Healthcare infrastructure and systems at this new facility were inadequate" with "crisis-level healthcare understaffing[,]" "[d]etainees described experiencing extremely cold temperatures, with leaks during rainy periods[,]" as well as "inadequate food quantities[.]" *See* Immigration Detention in California: A Review of Conditions of Confinement, available at https://oag.ca.gov/system/files/media/immigration-detention-2026.pdf (last accessed October 15, 2026). Additionally, one court within this circuit has entered a preliminary injunction with respect to CCDF, ordering ICE to ensure adequate health care staffing, timely approval and access to medical specialists, and a responsive "sick call" request system, in addition to other requirements. *See Ruiz v. U.S. Immigr. & Customs Enf't*, No. 3:25-CV-09757-MMC, 2026 WL 391924, at *1 (N.D. Cal. Feb. 10, 2026).

## II. DISCUSSION

The parties agree that Petitioner is detained pursuant to 8 U.S.C. §1226(c), which mandates detention during the pendency of removal proceedings. Despite this statutory mandate, Petitioner argues that she is entitled to release because (1) her detention without a bond hearing has become unconstitutionally prolonged, in violation of her procedural due process rights, and (2) the conditions of her confinement have rendered her detention "punitive rather than regulatory" in violation of her substantive due process rights. *See id*. ¶¶ 80–103. The Court finds that Petitioner is entitled to relief on her substantive due process claim and, therefore, does not address her remaining claim.

In *Demore v. Kim*, the Supreme Court upheld 8 U.S.C. § 1226(c) on a facial challenge, however, "[a]s other courts have explained in considering *Demore*, its conclusion that § 1226(c) is constitutional in some of its applications 'does not mean that the Court does not have the power to grant petitions for habeas corpus raising *as-applied* constitutional challenges to [§ 1226(c)] detention[.]'" *Gutierrez Romo v. Chestnut*, No. 1:26-CV-03449 KES FJS (HC), 2026 WL 2254385, at *4 (E.D. Cal. Aug. 4, 2026) (quoting *Perera v. Jennings*, 598 F. Supp. 3d 736, 744 (N.D. Cal. 2022)). Accordingly, some courts in the Ninth Circuit have considered a five-factor test in determining whether a noncitizens' detention has become "punitive rather than regulatory" such that "there is no regulatory purpose that can rationally be assigned to the detention or the detention appears excessive in relation to its regulatory purpose." *United States v. Torres*, 995 F.3d 695, 708 (9th Cir. 2021). Petitioner relies on these five factors to argue that she is entitled to relief on her substantive due process claim here:

> (1) the length of detention and whether it is excessive in relation to its regulatory purpose;
>
> (2) the government's contribution to any delay;
>
> (3) the evidence supporting the determination that detention is warranted to prevent flight risk or community danger;
>
> (4) whether the government interests in ensuring appearance at future proceedings and protecting the community could be protected through alternatives to detention that are less harsh;

> and
>
> (5) the conditions of detention and how they compare to conductions [sic] under which pretrial criminal detainees or people convicted of crimes are held.

*Doe v. Becerra*, 723 F. Supp. 3d 688, 692 (N.D. Cal. 2024) ("*Doe II*"); *Doe v. Chestnut*, 810 F. Supp. 3d 1169, 1179 (E.D. Cal. 2025) (relying on these factors); *Gutierrez Romo*, 2026 WL 2254385, at *5 (same). Assuming that this is the appropriate test, the Court finds that Petitioner's detention amounts to a substantive due process violation.

**A. Length of Detention**

The first factor—length of detention—weighs in Respondents' favor. While "it has ... never been clearly delineated in the context of immigration detention" when the length of detention results in a violation of the detainee's substantive due process rights, it is "undisputed" that such a limit exists. *Doe v. Becerra*, 704 F. Supp. 3d 1006, 1020 (N.D. Cal. 2023) (quoting *Torres*, 995 F.3d at 708). Though ultimately denying relief, the Ninth Circuit has noted in the pre-trial context that twenty-one months of detention "is approaching the limits of what due process can tolerate[.]" *Torres*, 995 F.3d at 709. Conversely, the Ninth Circuit has upheld detention that lasted forty-one months, though in that instance the petitioner's custody had been assessed by the immigration court in a bond hearing. *See Prieto-Romero v. Clark*, 534 F.3d 1053, 1056–57, 1062–65 (9th Cir. 2008). Here, though Petitioner's eleven months of detention is certainly lengthy, it has not surpassed the timeframes previously upheld by the Ninth Circuit.

The fact that the length of Petitioner's detention has not reached intolerable grounds does not end the due process inquiry. "[W]hether this prolonged detention is *excessive* and therefore punitive is a relative question. The duration of detention itself must be weighed against … the regulatory purposes for detention—preventing flight risk and protecting public safety." *Doe II*, 732 F. Supp. 3d at 1083. Petitioner has offered evidence that this eleven month duration is excessive in relation to its regulatory purpose.

**B. Conditions of Confinement**

Substantive due process imposes outer bounds on the conditions of civil immigration

detention. *Id*. at 1080; *see Jones v. Blanas*, 393 F.3d 918, 932 (9th Cir. 2004) ("[W]hen a [civil] detainee is confined in conditions identical to, similar to, or more restrictive than, those in which his criminal counterparts are held, we presume that the detainee is being subjected to 'punishment.'"). Petitioner's allegations regarding the conditions at CCDF and the medical treatment (or lack thereof) that she has received there comport with other courts' findings that conditions at CCDF are "not only inherently harsh but also worse than the conditions [...] in state prison." *Doe v. Chestnut*, 810 F. Supp. 3d at 1201. Indeed, Petitioner has pointed to multiple examples demonstrating how the conditions at the Ventura County Jail where she served four months of confinement for her controlled substance conviction, were considerably better than the conditions at CCDF. *Id*. ¶¶ 56–67.

Petitioner has been refused medical care for a growing mass in her abdomen, as well as a knee injury. *Id*. ¶ 41. Though a nurse practitioner at CCDF indicated that Petitioner would need an ultrasound to identify the cause of the mass, she was told she could not receive one until released or deported. *Id*. ¶ 42. In contrast, at the Ventura County Jail, "Petitioner never waited more than a day to be seen" by medical staff, and "she was given medication for a throat condition and antibiotics for an ear condition." *Id*. ¶ 62. Additionally, Petitioner cites to abysmal conditions at CCDF, including frigid temperatures, unsanitary facilities, inadequate food, and lack of outdoor time—conditions which have been corroborated by outside agencies and other courts. *See id*. ¶¶ 71–79; *Cervantes v. Warden*, No. 1:26-CV-02585-TLN-SCR, 2026, at *5 WL 2641803 (E.D. Cal. Sept. 8, 2026), *report and recommendation adopted sub nom. Luis Fernando J.C. v. Warden*, No. 1:26-CV-02585-TLN-SCR, 2026 WL 2797685 (E.D. Cal. Sept. 18, 2026). At the Ventura County Jail, Petitioner had access to outdoor facilities during the afternoon, daily vegetables, disinfectant for cleaning cells, and daily restocks of hygiene supplies, none of which is purportedly provided at CCDF. Dkt. No. 25 ¶¶ 56–67. These conditions "are[] excessive in relation to any non-punitive purpose[.]" *Gomez Ruiz v. U.S. Immigr. & Customs Enf't*, 834 F. Supp. 3d 835, 849 (N.D. Cal. 2026).

**C. Delay**

The second factor—the Government's contributions to the delay—weighs in Petitioner's favor. Petitioner was detained in November 2025 but not ordered removed until seven months later. This delay was allegedly due to the fact that the Government transferred her between detention facilities and reassigned her case to three separate IJs—Respondents have not disputed this, or presented any evidence to the contrary. Indeed, in *Demore* the Supreme Court noted that detention under § 1226(c) typically lasts between one and five months, and this includes the appeal process. *Demore*, 538 U.S. at 530.

**D. Flight Risk and Danger**

Determining whether Petitioner's prolonged detention has become punitive requires consideration of the extent to which it serves its regulatory purposes of preventing flight and danger to the community. "This inquiry requires evaluating the degree to which [Petitioner] poses a flight risk or danger, which in turn requires the Court to consider the evidence related to those risks." *Doe II*, 732 F. Supp. 3d at 1086.

The record on this factor is mixed, but the Court finds that it still tips in Petitioner's favor. Though Petitioner was convicted of a controlled substance offense, the undisputed facts in the amended petition demonstrate that she would not be dangerous if released. Petitioner was only required to serve four months of her sentence, and then was deemed suitable for release and placed on house arrest. Dkt. No. 25 ¶ 18. During that time, Petitioner complied with all the conditions of her release. *Id.* ¶ 19. Indeed, between her release from state custody in April 2025 and arrest by ICE in November 2025, she kept a clean criminal record.

Further, Petitioner's compliance with her house arrest, as well as deep ties with the community, suggest that she would not be a flight risk if released. Petitioner's daughter and mother both live in the United State and, prior to her detention, she was responsible for her mother's financial and medical affairs. *Id.* ¶¶ 14–15.

**E. Alternatives to Detention**

To the extent Petitioner poses any risk of flight, there are routine and obvious conditions

that ICE could impose, including check-ins with ICE officials and electronic monitoring. While the record does not contain evidence regarding the efficacy of GPS monitoring to mitigate *dangerousness*, the Court in *Doe II* highlighted "studies from the criminal context suggesting that electronic monitoring can reduce recidivism" and opined that "someone who knows their location is being monitored will face at least some additional incentive not to engage in criminal conduct." *Doe*, 732 F. Supp 3d at 1088. In this case, the availability of these alternatives to detention reduces the Government's interest in detention for the purported purpose of mitigating the risk of flight or dangerousness.

### F. Balancing

On balance, Petitioner has established that her detention is excessive in relation to its regulatory purpose. She has been detained for nearly a year—more than double the length of her criminal confinement—in conditions far worse than those she experienced in state custody. Further, the evidence before the Court demonstrates that she is not likely to be a flight risk nor danger to the community. And to the extent there is any perceived risk, it can be mitigated by alternatives to detention.

## III. CONCLUSION AND ORDER

For the foregoing reasons, the Amended Petition for Writ of Habeas Corpus is GRANTED as to Petitioner's substantive due process claim. Respondents shall release Petitioner from custody within seven days of this order. Respondents may impose additional conditions of release on Petitioner for the purposes of ensuring public safety and mitigating risk of flight. The Clerk of Court is directed to close this case and enter judgment for Petitioner. This resolves all pending motions.

**IT IS SO ORDERED.**

Dated: October 15, 2026

VINCE CHHABRIA
United States District Judge